W. L. McQUEEN, et al. v. DANIEL S. McQUEEN, et al.

Eastern Section. January 7, 1928.

Divine & Guinn, of Johnson City, for appellant.

H. T. Campbell, of Bristol, and Donnelly & Donnelly, of Mountain City, for appellee.

THOMPSON, J. This is a suit by some of the children and grandchildren of A. S. McQueen, deceased, against other children of said A. S. McQueen to have his will so construed as to award to the complainants an interest in an eighty-seven-acre tract of land of which said A. S. McQueen died seized and possessed.

A. S. McQueen and his wife, Augusta A. McQueen, lived on his farm in Johnson county. A. S. McQueen had the following children: William L., Robert B., Daniel S., James T., Laurinda, Lucinda, Rachel, Sarah, Etta, Elva L., Barbara Jane and Mary Matilda Hazeltine.

He owned four tracts of land which composed his farm; i. e., a tract known as the Burns land, a tract known as the Old tract or Old Vanhuss tract, a tract known as the Vanhuss fifty-acre entry, and a tract known as the E. Smith land. These tracts lay contiguous to each other, and the Old tract or Old Vanhuss tract lay above or north of what is known as the Hawkins line. He also owned a saw-mill and some land on which it was situated.

Prior to the execution of his will, he conveyed the northern or upper portion of the Burns land to his son William L. Then, on January 1, 1882, he executed his will, the material portions of which are as follows:

"I give, devise and bequeath to my beloved wife, Augusta A. McQueen, a sufficient dower to support her as long as she shall remain the widow McQueen, but if after my decease she should marry, then it is my will that my children should have the benefit of my property, that I shall die seized and possessed of.

"I bequeath to my son William L. McQueen by deed, all the property that I intended him to have of the property that I now possess.

"I give, devise and bequeath to my sons Robert B. McQueen, Daniel S. McQueen and James T. McQueen, the following lands, to-wit: The remainder of the Old tract above the Hawkins line, the fifty-acre entry deeded by Valentine Vanhuss, and the remainder of the old Burns land below Wm. L. McQueen's line, and its appurtenances and all profits, income and advantage that may result therefrom, to their use and behoof, forever.

"I give, devise and bequeath to my daughters Laurinda, Lucinda, Rachel, Sarah, Etta, Elva L., and Barbara Jane, my six oldest daughters, two hundred and sixty acres of land deeded by E. Smith, Mountain Land to be equally divided between them, to have and to hold the same to them and their heirs forever.

"I give, devise and bequeath to my four sons, William L., Robert B., Daniel S., and James T. McQueen, equal shares in my saw-mill and remainder of the cove ridge lands deeded by James M. Smith, to have and to hold the same to their own separate use forever.

"I give to my daughters Laurinda McQueen, Sarah, Etta Kite, and Barbara Jane Hawkins each of them a cow, as soon as it is convenient to do so.

"I give to my daughter Mary Matilda Hazeltine McQueen one hundred dollars, out of the income of all the rest of my personal property, and an equal share with the rest of my said daughters at the age of eighteen years."

A. S. McQueen died, and his will was probated on September 4, 1882. His widow, Augusta A., dissented from the will and upon her petition the county court appointed commissioners who allotted and set off to her a dower tract containing eighty-seven acres and upon which was situated the home place. She lived in this home place until a few years prior to her death in April, 1924, and never married again. This dower tract consisted of a part of the fifty-acre Vanhuss entry and a part of the Old tract or Vanhuss tract, both of which had been devised to Robert B., Daniel S., and James T. McQueen. The order confirming the report of the commissioners provided in part as follows:

"It is further ordered by the court that the title of the heirs of A. S. McQueen, deceased, in said dower interest be divested out of said heirs and vested in said Augusta A. McQueen, during her lifetime and that she pay the costs of this proceeding for which execution will issue."

The personal estate of A. S. McQueen being insufficient to pay his debts, his executor filed a petition against the widow and children for the purpose of having some of the real estate sold and the proceeds applied to the payment of said debts. In this proceeding the debts were apportioned as between Robert B., Daniel S., and James T. McQueen, on the one hand, and the six oldest daughters, on the other hand, and a little more than twenty-nine acres off the fifty-acre entry and Old tract (which belonged to the three sons) and all of the E. Smith land (which belonged to the six oldest daughters) were sold and the proceeds applied to the payment of said debts of A. S. McQueen.

Later, Daniel S. McQueen bought from Robert B. McQueen the latter's interest in all the land which he had taken under the will. Daniel S. McQueen also paid his sister, Mary Matilda McQueen, $500, and took from her a deed conveying to him all the interest which she might have in and to the estate of her deceased father, A. S. McQueen.

After the death of the widow, Augusta A. McQueen, in 1924. and at the time of the filing of the bill in this cause, James T. McQueen

and Daniel S. McQueen had possession of the eighty-seven acres as well as the other land which the three sons took under the will of their father.

The bill in this cause was filed by the son, W. L. McQueen, and the other heirs at law against the three sons, Robert B., Daniel S., and James T. McQueen, and the complainants insist that when the widow, Augusta A., died and her dower or life estate in the eighty-seven acres fell in or terminated, said eighty-seven acres went to all of the children or heirs at law under the provision of the will which read as follows:

"I give, devise and bequeath to my beloved wife, Augusta A. McQueen, a sufficient dower to support her as long as she shall remain the widow McQueen, but if after my decease she should marry, then it is my will that my children should have the benefit of my property, that I shall die seized and possessed of."

Complainants insist that this provision shows that the testator intended that when his widow's dower or life estate fell in and terminated all of his children should take an interest in the land comprising the same.

The defendants on the other hand insist that they took in fee the land out of which the dower or life estate was later carved by the commissioners and court, by the following paragraph of the will:

"I give, devise and bequeath to my sons Robert B. McQueen, Daniel S. McQueen and James T. McQueen, the following lands, to-wit: The remainder of the Old tract above the Hawkins line, and the fifty-acre entry deeded by Valentine Vanhuss, and the remainder of the old Burns land below Wm. L. McQueen's line, and its appurtenances and all profits, income and advantage that may result therefrom, to their use and behoof, forever."

The Chancellor held in favor of the defendants, and we think correctly. We think the proper construction of the will is that the clause relied upon by complainants shows that the testator desired in the event his widow married again that her life estate or interest should terminate and that his children or some of them should get the benefit of the same; but that the three sons, Robert B., Daniel S., and James T., took in fee the land from which the dower was later carved, and that when said dower or life estate fell in and terminated by the death of the widow they became the absolute owners of said land. This was evidently the view of the matter which the court took in the proceedings brought by the executor to have a part of the lands sold for the payment of the debts, and it seems to us that it is the most natural construction to put upon the will.

We do not think the fact that Daniel S. McQueen paid his sister, Mary Matilda McQueen, the sum of $500, and took the deed from her has any bearing on the question.

It results that in our opinion there was no error in the decree of the lower court dismissing complainants' bill at their cost, and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.